FOURTH DEPARTMENT, FEBRUARY, 2001

(February 7, 2001)

■ In the Matter of SOUTH SLOPE HOLDING CORP., Appellant-Respondent, v ALAN B. COMSTOCK, as Assessor of Town of Je-

rusalem, et al., Respondents-Appellants. (Proceeding No. 1.) In the Matter of CONSTANCE J. ROEDER, Appellant-Respondent, v ALAN B. COMSTOCK, as Assessor of Town of Jerusalem, et al., Respondents-Appellants. (Proceeding No. 2.) In the Matter of JOHN E. NICOLO et al., Appellants-Respondents, v ALAN B. COMSTOCK, as Assessor of Town of Jerusalem, et al., Respondents-Appellants. (Proceeding No. 3.) In the Matter of JOHN E. NICOLO et al., Appellants-Respondents, v ALAN B. COMSTOCK, as Assessor of Town of Jerusalem, et al., Respondents-Appellants. (Proceeding No. 4.) [721 NYS2d 171] —Order and judgment modified on the law and as modified affirmed without costs in accordance with the following Memorandum: Petitioners appeal and respondents cross-appeal from an order and judgment that, *inter alia,* determined assessed values for certain properties owned by petitioners for the years 1994, 1995 and 1996. Litigation between the same parties concerning assessments for 1989 and 1990 of other lots resulted in remittitur to this Court (*Matter of FMC Corp. v Unmack,* 92 NY2d 179). We then remitted the matter to the trial court for, *inter alia,* findings of fact (*Matter of South Slope Holding Corp. v Board of Assessment Review,* 254 AD2d 684, 686). Thereafter, the parties reached a settlement with respect to the assessments for 1989 and 1990.

The properties involved in this appeal include nine lots that were formerly part of a single tax account and a parcel at 810 East Bluff Drive. Of the nine lots, six were unimproved. Supreme Court found that all of the comparables for the nine lots submitted by petitioners' principal appraiser were unuseable, for various reasons. The court rejected other appraisals offered by petitioners because it found substantial substantive errors in those appraisals. It further rejected the valuation of the unimproved lots submitted by respondents' appraiser because the comparables were too dissimilar.

The court further found that, while petitioners proved blight and overassessment sufficient to meet their initial burden of overcoming the presumption that the assessments are valid, they failed to prove by a preponderance of the evidence that the blight continued through the years in question or, if it did, the extent of its effect on value. The record supports the court's rejection of the proposed comparables and the finding that blight, if any, was not quantified. Even though petitioners amply proved that blight in the form of intense opposition to development of the land did indeed continue in the years in question, the record provides no basis to quantify its effect on value.

The court accepted respondents' alternate appraisal figures for lot 9.2 for all three years and it accepted respondents' appraisal, which was less than the assessed value, for lots 21 and 28 for 1995. Portions of those lots were sold in 1995, and the 1996 assessment was reduced proportionately. With respect to the six unimproved lots, the court found that petitioners had not met their burden, and it rejected respondents' appraisals. The court thus declined to change the assessments for those six lots despite the fact that respondents' appraiser had found values below the assessments.

We conclude that the court was required to consider the entire record and that respondents' appraisals, received in evidence, constituted admissions against interest by respondents that the assessments were excessive to the extent that they exceeded those appraisals, despite the fact that the supporting data was rejected by the court (see, Erie Lackawanna Ry. Co. v State of New York, 54 AD2d 1089, 1089-1090). Thus, the assessment for lot 8 must be reduced for 1994, 1995 and 1996 from $21,200 to $14,500. The assessment for lot 10 must be reduced for those years from $15,100 to $15,000. The assessment for lot 13 must be reduced for those years from $17,500 to $14,500. The assessment for lot 15, which was sold in 1995, must be reduced for 1994 and 1995 from $29,400 to $17,500. The assessment for lot 17 must be reduced for 1994, 1995 and 1996 from $17,300 to $14,500. The assessment for lot 22 must be reduced for those years from $15,200 to $14,500. We therefore modify the order and judgment accordingly.

Both parties challenge the court's change in the assessment for 810 East Bluff Drive for all three years from $346,800 to $300,000. The court assigned no value to a boathouse because it was involved in litigation. Petitioners' appraiser valued the parcel at $200,000, and respondents' appraiser valued it at $410,000 without the boathouse or $415,000 with the boathouse. The main issue was the number of feet of lake frontage, and the court based its valuation on frontage of 461 feet, as shown on a 1996 survey. The appraisers used frontage figures from the tax map because neither had seen the most recent survey. Respondents' appraiser conceded that surveys are more accurate than tax maps. The record supports the court's reduction in the assessment for 810 East Bluff Drive.

All concur, Balio, J., not participating. (Appeals from Order and Judgment of Supreme Court, Yates County, Bender, J.—RPTL.) Present—Pigott, Jr., P. J., Green, Pine, Kehoe and Balio, JJ.