■    In the Matter of HENRY H. RICE et al., Appellants-Respondents, v ROBERT SROGI, as Commissioner of Assessment of the City of Syracuse, Respondent-Appellant. (Proceeding No. 1.) (And Two Other Proceedings.)— Order and judgment unanimously modified, on the law and facts, and, as modified, affirmed, with costs to petitioners, in accordance with the following memorandum: Petitioners Henry Hart Rice and Jack P. Weprin appeal from a judgment which reduced tax assessments for the years 1972, 1973 and 1974 on a commercial office building in Syracuse, known as the University Building. Petitioners Henry Hart Rice, John A. Englert, Sherwood Finn and E. Carlyle Smith, doing business as Sherlyle Properties Company, appeal from a judgment which reduced tax assessments on the same property for the years 1975 and 1976. Respondent cross-appeals from said judgments, including the portions thereof which awarded petitioners

additional allowances of $500 pursuant to CPLR 8303 (subd [a], par 2) and $500 pursuant to subdivision 2 of section 722 of the Real Property Tax Law for each tax year. The judgments reduced the assessments from $808,300 to $652,500 for 1972; from $808,300 to $623,500 for 1973; from $808,300 to $623,500 for 1974; and from $814,300 to $580,000 for the years 1975 and 1976. It is well established that in reviewing proceedings of this nature, we are empowered to make new findings of value where it appears that the trial court "'has failed to give to conflicting evidence the relative weight which it should have'" (People ex rel. McCracken v Miller, 291 NY 55, 61, citing Matter of City of New York [Newton Creek], 284 NY 493, 497; see McCrory Corp. v Gingold, 52 AD2d 23, 28; Real Property Tax Law, § 724). Although petitioners' appraiser relied heavily on the sale of the property in May, 1971 for a price of $1,100,000 and a June, 1974 sale of a one-third interest in the property which would indicate the full value of the property to have been approximately $1,185,000, he also presented a capitalization of income "overall" approach with a capitalization rate made up of a return on investment rate and effective tax rate. Respondent's appraiser utilized the land to building residual capitalization of income method. Petitioners' capitalization of income produced a range of valuation from a high of $1,174,000 for 1973 to a low of $821,000 for 1975, while respondent's capitalization of income produced a range of valuation from a high of $2,521,600 for 1976 to a low of $2,499,600 for 1972. The use of the different income methods of appraisal reaching, as they did, such broadly disparate results, prompted the trial court to reject both appraisals. In so doing, however, and in concluding that the full value of the property for the years in question was $1,450,000, the court failed to state any basis for a valuation in excess of the 1971 and 1974 sales of the property. This is not to say that the court was compelled to accept those prior sales as wholly determinative of market value if there were factors present that would justify some adjustment thereof (Matter of Kings Mayflower v Finance Administrator of City of N. Y., 63 AD2d 970). While some weight should be given to the 1971 sale, it nonetheless appears that because of the unusual circumstances under which it was made, the sale price was slightly less than the real market value of the property. It does not appear, however, that the 1974 sale was "explained away as abnormal in any fashion" (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277) and thus we conclude that it represents the best evidence of value (Plaza Hotel Assoc. v Wellington Assoc., supra; Matter of Atlas Realty Inv. v Lennox, 38 AD2d 739, affd 34 NY2d 780; cf. Matter of Great Atlantic & Pacific Tea Co. v Kiernan, 42 NY2d 236, 239). Since there was no showing of any measurable appreciation in value between 1971 and 1976, we find that the 1974 sale is the best evidence of value for 1972 and for all succeeding years at issue (see People ex rel. Hilton v Fahrenkopf, 279 NY 49). Accordingly, the property should be valued at $1,185,000 for all years in question, with $350,000 allocated to land. Applying the stipulated equalization rates, the assessed value of the property should be: for 1972, 45% × $1,185,000 or $533,250; for 1973 and 1974, 43% × $1,185,000 or $509,550; for 1975 and 1976, 40% × $1,185,000 or $474,000. Finally, while we do not disturb the trial court's award of an additional allowance pursuant to subdivision 2 of section 722 of the Real Property Tax Law, an award of additional allowances under the CPLR is not proper in a proceeding of this nature. (Appeals from order and judgment of Onondaga Supreme Court—tax certiorari.) Present—Dillon, P. J., Cardamone, Simons, Callahan and Witmer, JJ.